SIGNED.

Dated: February 9, 2012

James M. Marlar, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| MMP 10180, LLC, | No. 4:10-bk-38675-JMM |
| Debtor. | Adversary No. 4:11-ap-02173-JMM |
| MMP 10180, LLC, | **MEMORANDUM DECISION** |
| Plaintiff, | |
| v. | |
| SPCP GROUP IV, LLC, | |
| Defendant. | |

Pending before the court is a motion to dismiss this adversary proceeding, filed by Defendant SPCP Group IV, LLC ("SPCP") (ECF No. 6). All parties have filed pleadings in connection therewith, and oral argument was held on February 6, 2012.

The court took the matter under advisement, and now rules.

## THE CHAPTER 11 BACKGROUND

The Debtor filed for Chapter 11 relief on December 2, 2010. Its business is a "Pizzeria Uno" or "Loop Taste of Chicago" restaurant located at 10180 N. Oracle Road, Tucson, Arizona.

In its schedules, the Debtor listed the value of its real property at $1,600,000, and the secured debt against it at $2,892,000 (Admin. ECF No. 24). That debt was broken down as:

| 1st mortgage | SPCP Group IV | $1,600,000 |
|---|---|---|
| 2nd mortgage | U.S. Small Business Administration | 1,152,000 |
| 3rd mortgage | Roger Bonus Revocable Trust | 140,000 |
| | | $2,892,000 |

The Debtor filed a plan of reorganization, which was confirmed on September 26, 2011 (Admin. ECF No. 90).

In the plan, at Article XI, this court retained post-confirmation jurisdiction "to determine any and all adversary proceedings . . . that have been or may be commenced." It also retained continuing jurisdiction "to issue such orders as may be appropriate in aid of implementation and execution of the plan, to the extent authorized by Section 1142 of the Bankruptcy Code." And, "to hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated thereby, any agreement, or other documents governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court." (Admin ECF No. 50.)

After confirmation, the administrative side of the case appears, from the record, to have proceeded smoothly. But, on November 29, 2011, a dispute erupted between the Debtor and SPCP, which was filed as an adversary proceeding before this court.

# THE CURRENT DISPUTE

## A. The Initial Transaction

In order to best understand the current dispute, it is necessary to trace the history of the loan at issue.

Originally, the Debtor borrowed $1,600,000 from M&I Marshall & Isley Bank ("M&I"), on August 17, 2007. The Promissory Note bore interest at 7.19% per annum, for a 10-year term. Monthly payments were scheduled to be $12,690.79. Payments were due monthly on the 17th day of each month. The Note provided for a 5.0% penalty for each payment not made within 10 days after the 17th (in other words, a 10-day grace period). There is also a 3% "default interest rate" provided for any late payment (Ex. E to Complaint).

The loan was secured by a lien on Debtor's real property, insured to be in first position.

## B. Subsequent Transfer of the Note

At some undisclosed point between the initiation of the M&I loan and the filing of the Chapter 11 case, two things appear to have occurred: (1) the Note was transferred from M&I to SPCP, and (2) SPCP began an action, on November 10, 2010, in the Arizona Superior Court, seeking appointment of a receiver, which meant that the Note was in default. (See Disclosure Statement at 11, Admin. ECF No. 48 and SPCP objection, Admin. ECF No. 70).

The Debtor reacted by filing its reorganization case on December 2, 2010.

## C. The Bankruptcy Case and the Treatment of SPCP

The Debtor's plan and disclosure statement provided for the following "impaired treatment of SPCP:

3

Case 4:11-ap-02173-BMW    Doc 16   Filed 02/09/12   Entered 02/09/12 16:51:27   Desc
Main Document - Motion to Dismiss Complaint    Page 3 of 9

- Retention of existing lien(s);
- Interest reduction to 6%;
- Monthly principal and interest payments of $8,394, based upon a 30-year amortization

(Admin. ECF No. 48 at 15). SPCP also held an unsecured debt related to a separate revolving credit line. This debt is approximately $320,000 and placed in a class with other unsecured creditors, to be paid a pro-rata share of $2,500 for 60 months. (Admin. ECF No. 48 at 16; see also Ex. 2 to Admin. ECF No. 48.)

As for the $1,600,000 loan and other than the foregoing changes to the interest rate, monthly payment and amortization term, no other terms of the Promissory Note were altered. And, of course, if a plan was approved, the note would no longer be in default. 11 U.S.C. § 1123(a)(G,H). The plan would constitute the new agreement between the parties, Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993), and its terms would become the new binding contract. 11 U.S.C. § 1141(a).

### D. SPCP's Objection

After the plan and disclosure statement were circulated to the Debtor's creditors, SPCP filed an objection to the plan on July 13, 2011 (Admin. ECF No. 70), and voted against it (Admin. ECF No. 69).

### E. Confirmation Achieved

By September 23, 2011, however, the Debtor was able to reach consensus with its varied objecting classes, and had convinced SPCP to withdraw its objection (Admin. ECF No. 88). As part of that compromise, the Debtor had been able to line up new financing in order to pay about $94,423.07 in past due real estate taxes. This payment benefitted not only the Debtor,

4

Case 4:11-ap-02173-BMW    Doc 16    Filed 02/09/12    Entered 02/09/12 16:51:27    Desc
Main Document - Motion to Dismiss Complaint    Page 4 of 9

but also SPCP, because a tax lien senior to that of SPCP was removed (although replaced by a priming lien), thereby enhancing SPCP's collateral position (Admin. ECF Nos. 88 and 92) in that the new lien bore significantly less interest to that of the State, and because it allowed the new debt to be paid in reasonable installments.

With this and other hurdles overcome, the court was able to sign and docket its order confirming the plan on September 26, 2011 (Admin. ECF No. 90). The confirmation order had two attachments that discussed in some way, the treatment of SPCP's secured class:

**Exhibit A (Admin. ECF No. 90)**

- The secured lien amount was agreed to be $1,315,000;
- Monthly principal and interest payments were to be $8,394;
- 30-year amortization;
- First payment due on October 1, 2011;
- Interest rate of 6.5950% per annum;
- Balloon payment, September 1, 2015;
- Unsecured claim of $611,151.88; and
- "Except as expressly set forth herein, the SPCP Group IV, L.L.C. Loan Documents, terms, conditions and covenants shall remain in full force and effect and are incorporated herein."

**Exhibit B (Admin. ECF No. 90)**

- The language mirrored that of Exhibit A, but added a provision that Debtor's monthly bank statements were to be provided to SPCP.

No appeal was taken of the confirmation order, and it became final 14 days after the order was entered on the docket. FED. R. BANKR. P. 8002.

# THE INSTANT CONTROVERSY

## A. Jurisdiction

The dispute before the court is strictly about a disagreement over the time periods governing when payments under the plan are due. This is clearly a question of bankruptcy law, involving plan interpretation issues, and the type of matter exclusively reserved to the federal bankruptcy court (as a unit of the district court) for resolution. This is a core proceeding, as it involves an issue over the interpretation of a confirmed plan's provisions, a plan which arose solely because it is a Title 11 remedy. 28 U.S.C. §§ 157(a), (b); 1334. Because the dispute is a core proceeding, this court has the jurisdiction to decide it.

## B. Issues

The only issues to be decided by the court, in the final analysis, are:

1. Were the Debtor's payments, under the plan, timely made; and
2. If not, can a remedy be fashioned to continue to implement the plan without irrevocably damaging either the Debtor, SPCP or the plan's other constituents and creditors.

Although the issues have been framed and argued, procedurally, in the context of a motion to dismiss complaint under FED. R. CIV. P. 12(b) (made applicable to bankruptcy proceedings by FED. R. BANKR. P. 7012), the parties noted, at oral argument, that a decision on the substantive issues would most likely resolve the entire dispute.

To the extent that the motion to dismiss is based upon lack of subject matter jurisdiction, the motion must be DENIED.

In that spirit, then, the court will attempt to cut the Gordian Knot.

6

Case 4:11-ap-02173-BMW    Doc 16    Filed 02/09/12    Entered 02/09/12 16:51:27    Desc
Main Document - Motion to Dismiss Complaint    Page 6 of 9

## THE FACTS INTERTWINED WITH THE LAW

Since the entire case rests of whether payments by the Debtor were timely made or not, all of the significant facts can be gleaned from the pleadings filed by the parties, and by the application of legal principles.

The order confirming the plan was entered and docketed on September 26, 2011. According to the plan, its "effective date" (the day by which the Debtor is to begin implementing the plan[1]) was defined as "the first day on which the Plan becomes effective in accordance with its terms and the Confirmation Order." (Admin. ECF No. 50 at 6.)

That language is not a model of clarity. It gave no specific date in the future, it did not say anything about the end of an appeal period, or provide any other specific information about when the plan comes "effective." So, to assist it, the court turns to FED. R. BANKR. P. 3020(e), which can at least pinpoint the earliest date by which a plan can become effective. That rule states:

> An order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.

Here, there is no court order which would "otherwise" shorten this mandatory waiting period. There is no legal restriction to doing so, but the parties did not ask, and the court did not "otherwise order" a waiver or shortening of the 14-day period. FED. R. BANKR. P. 9006(c). Thus, it appears that the <u>earliest</u> effective date for this plan would be Monday, October 10, 2011. But there is another hitch--that day was a federal holiday, Columbus Day. So the effective date was pushed out to October 11, 2011. FED. R. BANKR. P. 9006.

---

[1] The Bankruptcy Code does not define the "effective date" of the plan. The effective date is usually understood as the "date on which the provisions of a plan of reorganization become effective and binding on the parties." Kenneth K. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 Am. Bankr. L.J. 551, 560–61 (1995); <u>accord In re Hoopai</u>, 581 F.3d 1090, 1101 (9th Cir. 2009).

7

Case 4:11-ap-02173-BMW    Doc 16    Filed 02/09/12    Entered 02/09/12 16:51:27    Desc
Main Document - Motion to Dismiss Complaint    Page 7 of 9

Because of this uncertainty in the <u>earliest</u> date that the Debtor could begin implementing its plan and making payments thereunder, because no party provided language "ordering otherwise," and because of the required, mandated 14-day stay on confirmed plans under Rule 3020(e), it was legally impossible for the Debtor to have met the plan-promised October 1, 2011 payment. This was obviously an oversight by all affected parties, but it nonetheless has a legal consequence. Although the parties had an expectation of an October 1 payment, the law trumped their expectation and instead imposed a 14-day waiting period. Since they did not address that point of law, it took precedence over their expectation.

Therefore, considering that the plan's October 1, 2011 payment was one which the Debtor was legally prohibited from making due to a stay that was imposed by operation of law (FED. R. BANKR. P. 3020(e)), and because no other terms of the plan applied, the court has no choice but to fall back on the plan language which does apply, to wit:

> Except as expressly set forth herein, the SPCP Group IV, L.L.C. Loan Documents, terms, conditions and covenants shall remain in full force and effect and are incorporated herein.

(Admin. ECF No. 90, Ex. A.)

The only "loan documents" that are relevant are the Promissory Note and Deed of Trust. The Note thus provides the court with an alternate payment date, the 17th of the month, plus a 10-day grace period, which would give the Debtor to and through October 27, 2011 within which to make the first payment. After the first payment, nothing else in the parties' agreed plan requires future payments to be made on the first day of each month. After the first payment, all subsequent payment dates were governed by the Note's terms, the 17th, plus a 10-day grace period.

The Debtor's first check was dated October 24, 2011. Allowing three days for mailing (FED. R. BANKR. P. 9006(f)), SPCP was deemed to have received it, timely, on October 27, 2011. This payment, then, was timely.

The Debtor's November check was dated and mailed ahead of schedule, on October 29, 2011. Its December payment was also mailed and dated early, December 1, 2011. No issues

8

Case 4:11-ap-02173-BMW    Doc 16    Filed 02/09/12    Entered 02/09/12 16:51:27    Desc
Main Document - Motion to Dismiss Complaint    Page 8 of 9

have been presented as to these later payments. According to Debtor's counsel, each check cleared and was accepted by SPCP. Nothing contradicts this chronology.

SPCP maintains that the first payment was in default, not having been made on October 1, 2011. It therefore began a trustee's sale on or about October 31, 2011.

However, due to the legal and practical aspects of the plan's "effective date" issues, SPCP's actions in beginning a trustee's sale were premature. This is precisely because, as noted, there had been no default when the trustee's sale was commenced, due to the intervention of the law as to stays and timing.

The court finds and concludes that the October, November and December, 2011 payments, made by the Debtor to SPCP, were timely. No defaults or responsibility for late fee payments were triggered. There being no default, no trustee's sale should have been commenced.

No other issues are before the court. A preliminary injunction prohibiting SPCP from continuing forward with its trustee's sale will be entered. (Counsel for Debtor shall upload the order.) All other issues raised by the parties are moot (i.e., address issues).

Should the parties desire to press forward with the case, SPCP should file an answer within 20 days. If the parties choose to dismiss the case, they certainly may do so at their convenience. If they desire another procedural route, they should either so stipulate or seek a status hearing.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Noticing
Center ("BNC") to all parties to this adversary proceeding